UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X Case No.: 08 CV 0494 (SHS)

HEDGECO, LLC d/b/a/ HEDGECO NETWORKS

:
:
:                **AFFIDAVIT IN FURTHER**
:                **SUPPORT OF REQUEST**
:                **FOR PRELIMINARY**
:                **INJUCTION**

                                    Plaintiff,          :

    - against -                                         :
                                                        :
JARED TOREN  and
JEFFREY SCHNEIDER

                                                        :

                                    Defendants.         :
-------------------------------------------------------------------X

STATE OF FLORIDA            )
                            ) ss.:
COUNTY OF PALM BEACH        )

        Evan Rapoport, being duly sworn, deposes and says:

1.  I am the Chief Executive Officer of Plaintiff, Hedgeco LLC *d/b/a* Hedgeco Networks

    ("HEDGECO") which is incorporated in the State of Florida and which maintains a

    business office located at 1350 Avenue of the Americas 24th Floor, New York, NY 10019.

2.  This Affidavit is offered (i) in Reply to Plaintiff's Order to Show Cause for a Preliminary

    Injunction and (ii) in Opposition to its Motion to Dismiss the Complaint. The facts within

    my prior affidavit are incorporated by reference as if fully set forth herein. Also

    incorporated by reference are the facts set forth in the copy of the FIRST AMENDED

1

COMPLAINT appended hereto as **Exhibit A,** which are true and correct to the best of my knowledge.

3. To amplify, HEDGECO's confidential and proprietary data base was created by Hedgeco over approximately six (6) years and contains information on approximately twenty thousand (20,000) individuals and entities, which were vetted as potential customers by and at the expense of HEDGECO. It is not public information as erroneously stated by the Defense.

4. To simplify, Defendants planned to and did take HEDGECO's business model, HEDGECO's business area (hedge funds), and HEDGECO's database for their own use. Primarily this was accomplished via their use of Onyx Global Advisors ("Onyx").

5. Incredibly, the Defendants began Onyx, in order to use HEDGECO's database and to compete, while subject to the Mutuality and Employment Agreements. Even Onyx's web site (http://onyxglobaladvisors.com/) was reregistered (via Network Solutions) on September 25, 2007, during the time when they were under the subject agreements.

6. As to the business of HEDGECO, it brings together investors and hedge funds and is compensated accordingly. Wherein Defendant Schneider states in his Affidavit (pg. 2, par. 6) that "we [Schneider, Toren and Onyx] are third party marketers, paid on commission

2

basis for bringing together certain hedge funds and potential investors," he is admitting that his business is *the same* as Hedgeco. Moreover, he does this via the same provider of securities; to wit: Puritan Securities, Inc. of Westport CT with whom he has caused a breach of their agreement with Hedgeco.

7. Moreover, Schneider had an employment agreement with Paradigm Global Advisors LLC ("Paradigm") whereas HEDGECO had an agreement to sell Paradigm's securities. Now, because of Defendants actions, Paradigm breached its agreement to permit HEDGECO to sell its securities, and now sells them via Onxy/Defendants instead of HEDGECO.

8. Defendants' Affidavits and Memorandum of Law are further misleading. Defendants have in fact unlawfully taken HEDGECO's confidential and propriety data, and now (but for the Temporary Restraining Order) solicits and does business with those same persons/entities and their same pool of funds, to buy investments via Onyx *in lieu of* investments via HEDGECO. This unlawful use and practice takes commissions that would be earned by HEDGECO and provides Defendants with these commissions instead.

9. That Defendants communicate with persons/entities within HEDGECO's database by some other means than an internet portal is irrelevant. First, Onyx itself maintains a website at http://onyxglobaladvisors.com/. Second, in addition to confusing form over substance (like telephone vs. mail communications), it is Defendants' unlawful usurpation of HEDGECO'S

3

proprietary and confidential information within the database, unlawfully obtained, that has materially breached the Defendants' contracts (Mutuality Agreement and Employment Agreement) and has caused damages to HEDGECO. Irreparable damage will continue unless the Defendants are restrained by this court.

10. In addition to taking confidential and proprietary information, Defendants deleted confidential and proprietary information from the database, which was discovered when members called to inquire why they could not access HEDGECO, as recently as February 2007.

11. Further, the Defendants have interfered with HEDGECO's contractual relationship with Puritan Securities Inc. ("Puritan"). Puritan is the provider of securities marketed by the HEDGECO. In direct competition and to the detriment of HEDGECO, Puritan has now contracted with Onyx and now provides certain securities to Onyx *in lieu of* its contractual agreement with HEDGECO, to the detriment of HEDGECO. But for the unlawful usurpation of the HEDGECO propriety/confidential information, Onyx would not have been able to offer the Puritan securities to those approximately 20,000 persons/entities within HEDGECO's proprietary database.

12. HEDGECO has done nothing unlawful, as grossly mis-stated in Defendants' attempts to persuade the court of their goodness. In violation of their agreements, these Defendants

4

have unlawfully taken HEDGECO's data, in which they have no right, and which they use unlawfully to compete and circumvent the contractual and other, related restrictions upon them. Nothing should distract the Court from those truths.

13. As to the false issue of Defendant Jeffrey Schneider's signature, his own email acknowledges that he duly signed the Mutuality Agreement (Attached to First Amended Complaint as Exhibit A.). His lack of memory and the cut /paste allegation within his affidavit (at par. 4) is both deceptive and false at best. Attached hereto as **Exhibit B** is a true copy of an email dated September 4, 2006 *from* Defendant Schneider *to* me and cc'd to Andrew Schneider (no relation) that states in relevant part:

> "As I discussed with Andrew, you guys were going to hand over a bunch of investors that have not been called as soon as I signed the non compete/ non disclosure. **I did this two weeks ago.**" (emphasis added).

14. By their wrongful conduct, Defendants have violated the terms of their Agreements with Plaintiff, competed, circumvented Plaintiff's business and interfered with its contracts, and will continue to do so without a preliminary injunction, as irreparable harm has and will continue to result unless the court grants the relief sought.

continued

5

Respectfully,

EVAN RAPOPORT

On the 5th day of March 2008, before me personally appeared Evan Rapoport to me known and known to me to be the person who executed the foregoing instrument, and he acknowledged to me that he executed the same.

Notary Public

FRANCES BURNS
MY COMMISSION # DD 326047
EXPIRES: June 6, 2008
Bonded Thru Notary Public Underwriters

6

# EXHIBIT A

UNITED STATE STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x
HEDGECO, LLC *d/b/a* HEDGECO NETWORKS      )
                                           )
                              Plaintiff,   )    Case No. **08 CV 00494**
                                           )       (SHS)
                                           )
-against-                                  )
                                           )
JEFFREY SCHNEIDER and                      )    **FIRST AMENDED**
JARED TOREN,                               )    **COMPLAINT**
                              Defendants.  )
_____x

The Plaintiff, HEDGECO, LLC *d/b/a* HEDGECO NETWORKS  by and through their

undersigned counsel, alleges and complains of the DEFENDANTS JEFFREY SCHNEIDER and

JARED TOREN in this First Amended Complaint, as follows:


**The Parties and Diversity of Citizenship**

1. Plaintiff, HEDGECO, L.L.C. doing business as HEDGECO NETWORKS ("HEDGECO" )

   was and remains a Florida Limited Liability Corporation, duly authorized to do business in

   the State of New York.


2. HEDGECO maintains an office at 1350 Avenue of the Americas 24th Floor New York, NY

   10019.


3. Defendant JEFFREY SCHNEIDER ("SCHNEIDER") is a natural person residing in the

   State of Texas and who maintains an office therein at 6836 Bee Caves Road Ste. 245 Austin

   Texas 78746 (Travis County).

1

4. Defendant JARED TOREN ("TOREN") is a natural person residing in the State of Texas and who maintains an office therein at 6836 Bee Caves Road Ste. 245 Austin Texas 78746 (Travis County).

**Jurisdiction**

5. There is complete diversity of citizenship pursuant to 23 U.S.C. §1332 et seq.

6. The cause of action involves a controversy for monetary damages in excess of $75,000.00, in addition to equitable relief.

**Venue**

7. Upon information and belief, material acts and transactions at issue between Plaintiff and Defendants occurred with the person of Richard Bronson ("Bronson"), an individual with a residence address of 62 Watts Street #2, New York, NY, the investment firm of Himelstein Mandel Investment Fund ("HMF") with an office at 45 Rockefeller Plaza, Suite 2032 New York, NY 10111, the leveraged buy-out firm of Holding Capital Group ("HGG") with an office at 630 Third Avenue NY, NY 10017, as well as other persons and entities in Plaintiff's confidential and proprietary database.

**Count One  (breach of contract)**

8. Plaintiff re-states and re-alleges paragraphs 1-7 as if fully set forth herein.

2

9.  At all times relevant, HEDGECO was and remains an information portal, hedge fund services firm and dealmaker, that allows subscribing members to communicate with and access hedge fund entities in order to establish investment relationships, which generates commissions and fees to HEDGECO.

10. In the course of its business, HEDGECO, owns or has legal title to subscribing member lists and other, related proprietary and confidential information HEDGECO has developed or lawfully obtained, at its expense and efforts, over a period of approximately six years that consists of approximately 20,000 persons and entities, as well as business records and plans, customer lists and records, trade secrets, and pricing structure.

11. At all times relevant, Evan Rappaport ("Rappaport") was and remains the Chief Executive Officer ("CEO") of HEDGECO.

12. Commencing on or about August 16, 2006, to or about October 2, 2007, and at all times relevant, Defendant SCHNEIDER had a contractual relationship with HEDGECO as a potential managing director for HEDGECO.

13. On or about August 16, 2006, HEDGECO and SCHNIEDER entered into a Mutual Confidentiality and Non-Circumvent Agreement (the "**Mutuality Agreement**"). A copy of the Mutuality Agreement is appended as Exhibit "A".

3

14. Pursuant to the terms of the **Mutuality Agreement**, Section "1." thereof, confidential information includes without limitation: Business records and plans, customer lists and records, trade secrets, pricing structure, and other proprietary information as may be brought to the attention of the parties. Pursuant to section "1.1" thereof, SCHNEIDER agreed to keep and to hold confidential, all proprietary information or trade secrets in trust and confidence from the date thereof to a period of time for 12 months after termination of the Mutuality Agreement.

15. Commencing on or about February 26, 2007 to or about October 2, 2007, and at all times relevant, Defendant TOREN was an employee of HEDGECO.

16. On or about February 26, 2007, the HEDGECO and TOREN entered into an Employee Confidentiality and Unfair Competition Agreement (the "**Employment Agreement**"). A copy of the Employment Agreement is appended as Exhibit "B".

17. Pursuant to Paragraph "2" of the **Employment Agreement**, TOREN was expressly prohibited from disclosing HEDGECO's confidential and proprietary information for the period of his employment and for a period of five (5) years thereafter.

18. Pursuant to Paragraph "3(b)" of the **Employment Agreement**, TOREN was expressly prohibited from soliciting or contacting any of the HEDGECO's customers, clients, or brokers with whom TOREN has had contact during the term of his employment with HEDGECO and for a period of two (2) years thereafter.

4

19. At all times relevant, prior to and since leaving the employ or relationship with HEDGECO, Defendants formed or became associated with one Onyx Global Advisors ("Onyx") a firm that advertises itself as a third party marketer, in Austin, Texas with an office located at 6836 Bee Caves Road Ste. 245 Austin, Texas.

20. At all times relevant and continuing Onyx has and still does maintain a website at http://onyxglobaladvisors.com/.

21. Defendant SCHNEIDER holds himself out to be Principal of Onyx, as set forth on the foregoing Onyx website.

22. Defendant TOREN holds himself out to be Senior Vice President of Onyx, as set forth on the foregoing Onyx website.

23. On or about July 2007, while the **Mutuality Agreement** and the **Employment Agreement** were both in full force and effect, Mr. Bronson, of New York, NY, was a provider of a financial products that HEDGECO would broker in the ordinary course of its business and was entered into HEDGECO's proprietary database.

24. Despite the foregoing as confidential and proprietary to HEDGECO, Defendant SCHNEIDER, directly or indirectly, approached Richard Bronson to solicit him to sell his products to HMF via SCHNEIDER, and to the benefit of SCHNEIDER, *in lieu of*

5

HEDGECO.  In the course of such solicitation, SCHNEIDER provided Bronson's contact information to HMF.

25. Despite the foregoing as confidential and proprietary to HEDGECO, Defendant TOREN, directly or indirectly, approached Bronson to solicit him to sell his product to HMF via TOREN, to the benefit of TOREN, *in lieu of* HEDGECO.  In the course of such solicitation, TOREN provided Bronson's contact information to HMF.

26. As a result of the foregoing provisions of confidential and proprietary information to HMF, Bronson was caused to be solicited by HMF to the detriment of HEDGECO.

27. Upon information and belief, SCHNEIDER has unlawfully provided other and further confidential and proprietary information to HMF to the detriment of HEDGECO.

28. Upon information and belief, TOREN has unlawfully provided other and further confidential and proprietary information to HMF to the detriment of HEDGECO.

29. SCHNEIDER, either acting alone or in concert with TOREN, has unlawfully disclosed and disseminated confidential and proprietary information belonging to HEDGECO to the detriment of HEDGECO.

30. SCHNEIDER, either acting alone or in concert with TOREN, has unlawfully deleted confidential and proprietary information belonging to HEDGECO to the detriment of HEDGECO.

31. SCHNEIDER, either acting alone or in concert with TOREN, has unlawfully **misappropriated** confidential and proprietary information belonging to HEDGECO to the detriment of HEDGECO.

32. TOREN, either acting alone or in concert with SCHNEIDER, has unlawfully disclosed and disseminated confidential and proprietary information belonging to HEDGECO to the detriment of HEDGECO.

33. TOREN, either acting alone or in concert with SCHNEIDER, has unlawfully deleted confidential and proprietary information belonging to HEDGECO to the detriment of HEDGECO.

34. TOREN, either acting alone or in concert with SCHNEIDER, has unlawfully misappropriated confidential and proprietary information belonging to HEDGECO to the detriment of HEDGECO.

35. SCHNEIDER, either acting alone or in concert with TOREN, has and continues to unlawfully solicit and do business with persons/entities from confidential and proprietary information belonging to HEDGECO to the detriment of HEDGECO.

36. TOREN, either acting alone or in concert with SCHNEIDER, has and continues to unlawfully solicit and do business with persons/entities from confidential and proprietary information belonging to HEDGECO to the detriment of HEDGECO.

37. SCHNEIDER and TOREN, individually and collectively, having unlawfully obtained commissions from unlawful solicitations and business transactions based upon confidential and proprietary information belonging to HEDGECO to the detriment of HEDGECO.

38. SCHNEIDER and TOREN, individually and collectively, via Onyx, have unlawfully obtained commissions from unlawful solicitations and business transactions based upon confidential and proprietary information belonging to HEDGECO to the detriment of HEDGECO.

39. SCHNEIDER has unlawfully provided other and further confidential and proprietary information belonging to HEDGECO to third parties to the detriment of HEDGECO.

40. TOREN has unlawfully provided other and further confidential and proprietary information belonging to HEDGECO to third parties to the detriment of HEDGECO.

41. At all times relevant, Defendants, either individually, collectively or via Onyx, have directly and wrongfully competed with HEDGECO, wherein they have wrongfully contacted customers and clients proprietary to HEDGECO, and wrongfully circumvented the lawful

restrictions upon them, in order to obtain commissions for themselves and /or for Onyx, in lieu of and to the detriment of HEDGECO.

42. The forgoing constitutes a material breach of the **Mutuality Agreement** that has caused irreparable loss and monetary damages to HEDGECO in the sum of approximately $500,000.

43. The forgoing constitutes a material breach of the **Employment Agreement** that has caused irreparable loss and monetary damages to HEDGECO in the sum of approximately $500,000.

**Count Two (Tortious interference with contractual relations)**

44. Plaintiff re-states and re-alleges paragraphs 1-43 as if fully set forth herein.

45. At all times relevant, Defendant SCHNEIDER knew that Plaintiff had a contractual relationship with Defendant TOREN; in particular the Employment Agreement (Exhibit B).

46. Despite the foregoing, the Defendant SCHNEIDER solicited Defendant TOREN to form and/or join Onyx, while TOREN was in the employ of HEDGECO, and intentionally caused Defendant TOREN to breach and/or end his agreement with Plaintiff, and to enter into a contractual agreement with Defendant SCHNEIDER, via Onyx, instead of Plaintiff.

47. At all times relevant, Defendant TOREN knew that Plaintiff had a contractual relationship with Defendant SCHNEIDER; in particular the Mutuality Agreement (Exhibit A).

9

48. Despite the foregoing, the Defendant TOREN solicited Defendant SCHNEIDER to form and/or join Onyx, while SCHNEIDER was subject to the Mutuality Agreement, and intentionally caused Defendant SCHNEIDER to breach and/or end his agreement with Plaintiff, and to enter into a contractual agreement with Defendant TOREN, via Onyx, instead of Plaintiff.

49. At all times relevant, Defendants knew that Plaintiff had a contractual relationship with Puritan Securities Inc. of Westport, CT ("Puritan").

50. Despite the foregoing, the Defendants solicited Puritan to sell its securities, and intentionally caused Puritan to cease its agreement with Plaintiff, and to enter into a contractual agreement with Defendants, via Onyx, instead of Plaintiff.

51. At all times relevant, Defendants knew that Plaintiff had a contractual relationship with Paradigm Global Advisors LLC located in New York, NY ("Paradigm").

52. Despite the foregoing, the Defendants solicited Paradigm to sell its securities, and intentionally caused Paradigm to cease its agreement with Plaintiff, and to enter into a contractual agreement with Defendants, via Onyx, instead of Plaintiff.

53. At all times relevant, Defendants knew that Plaintiff had a contractual relationship with certain individuals within its proprietary database.

10

54. Despite the foregoing, the Defendants solicited these individuals and intentionally caused them to cease their breach their agreements to do business with Plaintiff, and to enter into a contractual agreement with Defendants, via Onyx, instead of Plaintiff, causing loss and damage to Plaintiff.

55. At all times relevant, Defendants knew that Plaintiff had a contractual relationship with certain financial institutions within its proprietary database.

56. Despite the foregoing, the Defendants solicited these financial institutions and intentionally caused them to breach their agreements to do business with Plaintiff, and to enter into a contractual agreement with Defendants, via Onyx, instead of Plaintiff, causing loss and damage to Plaintiff.

57. With knowledge of their contractual relationship with Plaintiff, and intention to procure a breach, the Defendants have caused persons/entities within HEDGECO's proprietary database, known only to Defendants by their unlawful usurpation of the foregoing, to breach their contracts with HEDGECO and to do business with other and competing business entities and persons in lieu thereof, including but not limited to Onyx, causing irreparable harm and monetary damages in the amount of at least $500,000.

58. As a result of the foregoing interferences, Defendants have caused Plaintiff irreparable harm and monetary damages in the amount of at least $500,000.

**Count Four (Breach of Fiduciary Duty)**

59. Plaintiff re-states and re-alleges paragraphs 1-58 as if fully set forth herein.

60. As an agent of HEDGECO under the Mutuality Agreement, SCHNEIDER was required to act in the best interests of HEDGECO as principal at all times during the course of his contractual obligations, such that SCHNEIDER owed HEDGECO a contractual fiduciary duty under the Mutuality Agreement.

61. As an agent of HEDGECO, SCHNEIDER was required to act in the best interests of HEDGECO as principal at all times during the course of his affairs with HEDGECO, such that SCHNEIDER owed HEDGECO a common law fiduciary duty via the agency relationship.

62. As a employee under the Employment Agreement, TOREN was required to act in the best interests of his employer at all times during the course of his employment, such that TOREN owed HEDGECO a contractual fiduciary duty by contact under the Employment Agreement.

63. As a employee of HEDGECO, TOREN was required to act in the best interests of his employer at all times during the course of his employment, such that TOREN owed HEDGECO a common law fiduciary duty via the employer – employee relationship.

12

64. As a result of the foregoing Defendant SCHNEIDER breached his fiduciary duties, such that Defendant SCHNEIDER has caused Plaintiff irreparable harm and monetary damages in the amount of at least $500,000.

65. As a result of the foregoing Defendant TOREN breached his fiduciary duties, such that Defendant TOREN has caused Plaintiff irreparable harm and monetary damages in the amount of at least $500,000

**Count Five (Permanent Injunction)**

66. Plaintiff re-states and re-alleges paragraphs 1-65 as if fully set forth herein.

67. Pursuant to paragraph ("1.1") of the **Mutuality Agreement**, it was both acknowledged and agreed by SCHNEIDER that HEDGECO would suffer irreparable harm in the event of a breach of the agreement, and that HEDGECO was entitled to injunctive relief .

68. The forgoing was a material breach of the **Mutuality Agreement** that has caused irreparable loss and damage to HEDGECO, in addition to money damages.

69. Pursuant to paragraph "4." of the **Employment Agreement**, it was both acknowledged and agreed by TOREN that HEDGECO would suffer irreparable harm in the event of a breach of the agreement, and that HEDGECO was entitled to injunctive relief as a cumulative and not necessarily successive and exclusive remedy in addition to monetary damages.

13

70. The forgoing was a material breach of the **Employment Agreement** that has caused irreparable loss and damage to HEDGECO, in addition to money damages

71. Additionally, as recently as December 2007, the Defendants jointly and severally attempted to obtain the business of Holding Capital Group ("HGG"), a client and customer of HEDGECO, in violation of their respective agreements.

72. As a result of the foregoing, Plaintiff is entitled to injunctive relief against SCHNEIDER.

73. As a result of the foregoing, Plaintiff is entitled to injunctive relief against TOREN.

**Count Six (Judicial Accounting)**

74. Plaintiff re-states and re-alleges paragraphs 1-73, as if fully set forth herein.

75. Defendants have intentionally deleted and destroyed portions of HEDGECO'S proprietary and confidential information, the full extent of which is known only to Defendants, which has caused damages and irreparable harm to Plaintiff.

76. As a result of the foregoing destruction, breaches and unlawful usurpation of HEDGECO's confidential and proprietary information, Defendants have taken such valuable information and profits via commissions and investment fees such that Plaintiff is entitled to an accounting by appointment of a Master pursuant to FRCP 53(1)(B)(i) and (ii).

14

**Wherefore**, the Plaintiff is entitled to judgment against the Defendants, individually and collectively, for (1) money damages in the sum of an amount greater than $500,000; (2) a permanent injunction that causes the cessation of use of proprietary and confidential information belonging to HEDGECO, (2) a judicial accounting; (4) costs, (5) reasonable attorneys fees, and (6) for such other and further relief deemed appropriate in the discretion of the court.

Dated:  March 3, 2008
       New York, NY

                      Yours, etc.

                      Law Office of Brian Reis, Esq.
                      **Attorney for the Plaintiff**
                      80 Broad Street 33rd Floor
                      New York, NY 10004
                      Tel. 212.785.5170

                      By: _____
                      Andrew Small, Esq. (AS-1294)
                      Direct Dial 212.983.0921
                      Fax 212.646.1073
                      E-mail: ABSLawyer@comcast.net

15

EXHIBIT A

## MUTUAL CONFIDENTIALITY AND NON-CIRCUMVENT AGREEMENT BETWEEN _____ AND HEDGECO, L.L.C.

This Agreement (this "Agreement") is made effective as of August 16, 2006, by and between Jeffry Schneider, of Austin, TX referred to as "Andrew Schneider" and HedgeCo, L.L.C./parent company and or affiliate members, of Palm Beach, Florida referred to as "HedgeCo."

1. **CONFIDENTIALITY.** "___" and "HedgeCo," and its parent companies, employees, agents, or representatives will not at any time or in any manner, either directly or indirectly, use for the personal benefit of "____" and "HedgeCo," or divulge, disclose, or communicate in any manner, any information that is proprietary to "___" or "HedgeCo." Confidential Information means any information and/or material which is proprietary to either or both parties, whether or not owned or developed by either or both parties, which is not generally know other than by either or both parties, and which either party may obtain through any direct or indirect contact with the other party.

Confidential Information includes without limitation: Business records and plans, Customer lists and records, Trade secrets, Pricing structure, and other proprietary information as may be brought to the attention of the parties. This provision will continue to be effective for a period of 12 (twelve) months after the termination of this Agreement and includes the following:

1. 1. The Undersigned mutually agree to hold all confidential or proprietary information, or trade secrets ("information") in trust and confidence and agrees that it shall be used only for the contemplated purpose, and shall not be used for any other purpose or disclosed to any third party under any circumstances whatsoever.

1. 1. Any information designated as confidential shall not be disclosed to any employee, consultant or third party unless the parties to this contract agree to execute and be bound by the terms of this agreement, and disclosure by the parties is first approved.

1. 1. It is understood that the Undersigned shall have no obligation with respect to any information known by the Undersigned or as may be generally known within the industry prior to date of this agreement, or that shall become common knowledge within the industry thereafter.

1. 1. The Undersigned acknowledges the information disclosed herein is proprietary or trade secrets and in the event of any breach, the non breaching party shall be entitled to injunctive relief as a cumulative and not necessarily successive or exclusive remedy to a claim for monetary damages.

1. 1. This agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.

| Deleted: October |
|---|
| Deleted: 23 |
| Deleted: 2 |
| Deleted: _____ |
| Deleted: New York |
| Deleted: NY |
| Deleted: ____ |

Each party agrees that all information obtained from the other party will be accepted in confidence and maintained strictly confidential and shall not, without prior written consent to the disclosing party, disclose such information to another.

Non-Circumvention: Each party agrees that neither party shall take measures, intentionally or inadvertent, to contact, deal with, or create a business relationship with a client of the other party. This applies with regard to any transaction, whether resulting from the disclosure of Confidential Information from one party to the other party or not. Neither party will attempt to circumvent the other party by contacting any person, company or entity introduced to them by the other party, or any of the other party's customers, distributors, clients, consultants, agents or the like, anywhere in the world without the expressed authority of, and in the interest of any party to this Agreement. Neither party will transact any business with persons, companies or entities that both parties mutually work with.

2. REMEDIES. In addition to any and all other rights a party may have available according to law, if any party defaults by failing to substantially perform any provision, term or condition of this Agreement (including without limitation the failure to make a monetary payment when due), the other party may terminate the Agreement by providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default. The party receiving such notice shall have 30 days from the effective date of such notice to cure the default(s). Unless waived by a party providing notice, the failure to cure the default(s) within such time period shall result in the automatic termination of this Agreement.

3. ENTIRE AGREEMENT. This Agreement contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written concerning the subject matter of this Agreement. This Agreement supersedes any prior written or oral agreements between the parties. Any further agreements, in order to be considered, addendum or otherwise, must be in writing, duly executed and delivered to each party thereto.

4. SEVERABILITY. If any provision of this Agreement will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable.

5. GOVERNING LAW. This Agreement shall be construed in accordance with the laws of the State of Florida. Any disputes arising from this relationship shall be brought in the 15th Judicial Circuit of Palm Beach County, Florida.

6. NOTICE. Any notice or communication required or permitted under this Agreement shall be sufficiently given if delivered in person or by certified mail, return receipt requested, or equivalent with return receipt, to the address set forth

in the opening paragraph or to such other address as one party may have furnished to the other in writing.

7. **ASSIGNMENT.** Neither party may assign or transfer this Agreement without the prior written consent of the non-assigning party, which approval shall not be unreasonably withheld.

HedgeCo, L.L.C.:

Name:  Andrew Schneider

By:

Title:  Principal

Date:  August 16, 2006

_____:

Name:  Jeffry Schneider

By:

Title:

Date:  August 16, 2006

Deleted:
Deleted:
Deleted:
Deleted:
Deleted:
Deleted:
Deleted:

Deleted:
Deleted:
Deleted:
Deleted:
Deleted:

EXHIBIT B

## EMPLOYEE CONFIDENTIALITY AND UNFAIR COMPETITION AGREEMENT

THIS AGREEMENT MADE this the 26th day of February 2007, by and between Jared Toren (hereinafter referred to as Employee") and HedgeCo Networks (hereinafter referred to as "Company").

WHEREAS, Employee desires to be employed by Company in a capacity in which he may receive, contribute or develop Confidential and Proprietary Information;

WHEREAS, access, contribution and/or development of such information is necessary in order for Employee to perform his duties in a professional manner;

WHEREAS, such information is important to the future of the Company and the Company expects the Employee to keep secret such proprietary and confidential information and not to compete with the Company during his employment and for a reasonable period after employment.

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

1. <u>Definitions</u>. As used in this Agreement:

(a) "Company" shall mean HedgeCo Networks its successors and assigns, and any of their present or future subsidiaries or organizations controlled by, controlling, or under common control with them.

(b) "Affiliate" shall mean any person, corporation, partnership or other entity with which joint enterprises are carried on with the Company or in which the Company has any interest.

(c) "Confidential and Proprietary Information" shall mean any and all information disclosed or made available to the Employee or known by the Employee as a direct or indirect consequence of or through his employment by the Company and not generally known in the industry in which the Company is or may become engaged, including, but not limited to, customers and brokers, marketing plans, product development, plans, publications, equipment, and financial information, and any information related to the Company's and its Affiliate's products, devices, structures, processes, procedures, methods, formulae, techniques, services, or finances including, but not limited to, information relating to research, development, Inventions, manufacture, purchasing, accounting, engineering, marketing, merchandising, or selling.

(d) "Inventions" shall mean discoveries, concepts, and ideas, whether patentable or not, relating to any present, contemplated, or prospective activities, investigations or obligations of the Company, including, but not limited to, products, devices, structures, processes, procedures, methods, formulae, techniques, or services and any improvements to the foregoing.

1. <u>Right to Inventions</u>. With respect to all Inventions made, conceived or reduced to practice by Employee, whether or not during the hours of his employment or with the use of Company facilities, materials, or personnel, in whole or in part, either solely or jointly with others, during the term of his employment by the Company and for a period of one (1) year after any termination of such employment, and without royalty or any other consideration:

(a) Employee shall inform the Owner of the Company promptly and fully of such Inventions and upon request by such person set forth in writing in such details as are necessary to explain the structures, procedures, and methodology employed and the results achieved.

(b) Employee hereby agrees that all such Inventions shall be the sole and exclusive property of the Company, whether patented or not, and Employee hereby assigns and agrees to assign to the Company all of his right, title and interest in and to such Inventions and to all proprietary rights therein, based thereon or related thereto, including, but not limited to, applications for United States and foreign letters of patent and resulting letters of patent. Employee shall execute, acknowledge, and deliver any and all instruments conveying, confirming or otherwise affecting such ownership by the Company of such Inventions.

(c) Employee shall execute such documents and provide such assistance as may be deemed necessary by the Company to apply for, defend, or enforce any United States and foreign letters patent based on or related to such Inventions.

(d) Except as specifically listed on Schedule A attached hereto and executed by both parties, Employee hereby waives any and all rights to claim that any discoveries, concepts, ideas, products, devices, structures, processes, procedures, methods, formulae, techniques or services and any improvements thereto have been made, acquired, conceived, or reduced to practice prior to his employment by the Company and not subject to the terms and conditions of this Agreement.

2. <u>Non-Disclosure of Confidential Information</u>. Except as required in the performance of his duties to the Company, during the term of his employment and for a period of five (5) years after termination of such employment, Employee shall treat as confidential and shall not, directly or indirectly, use, disseminate, disclose, publish, or otherwise make available to any person, firm, corporation, unincorporated association or other entity any Confidential and Proprietary Information or any portion thereof. Upon termination of his employment with the Company, all papers, documents, records, lists, notebooks, files, and similar items containing Confidential and Proprietary Information, including copies thereof, then in the Employee's possession, whether prepared by him or others, shall be promptly returned to the Company. If at any time after the termination of employment, the Employee determines that he has any Confidential and Proprietary Information in his possession or control, he shall immediately return to the Company all such Confidential and Proprietary Information, including all copies and portions thereof.

3. <u>Non-Competition</u>. (a) During the term of Employee's employment with the Company and for a period of two (2) years thereafter, Employee agrees that he will not, directly or

-2-

indirectly, own, operate, manage, consult with, control, participate in the management or control of, be employed by, maintain or continue any interest whatsoever in any enterprise located within a Five Hundred (500) mile radius of Hedgeco which manufactures, processes, sells, distributes, markets, or engages in the business of Hedge Funds without the prior written consent of the Owner of the Company.

(b) During the term of Employee's employment with the Company and for a period of two (2) years thereafter, Employee agrees that he will not solicit or contact any of the customers, clients, or brokers with whom Employee has had contact during the term of his employment with the Company.

4. Employee acknowledges that his adherence to the terms of the covenants set forth in Sections 2, 3 and 4 are necessary to protect the value of Company's business, that a breach of such covenants will result in irreparable and continuing damage to the Company, and that money damages would not adequately compensate Company for any such breach and, therefore, that Company would not have an adequate remedy at law. In the event any action or proceeding shall be instituted by Company to enforce any provision of Sections 2, 3 or 4, Employee hereby waives the claim or defenses in such action that (i) money damages are adequate to compensate the Company for such breach, and (ii) there is an adequate remedy at law available to Company, and shall not urge in any such action or proceeding the claim or defense that such remedy at law exists. Company shall have, in addition to any and all remedies at law, the right, without posting of bond or other security, to an injunction, both temporary and permanent, specific performance and/or other equitable relief to prevent the violation of any obligation under Sections 2, 3 or 4. The parties agree that the remedies of Company for breach of Sections 2, 3 or 4 shall be cumulative, and seeking or obtaining injunctive or other equitable relief shall not preclude the making of a claim for damages or other relief. The parties to this Agreement also agree that Company shall be entitled to such damages as Company can show it has sustained by reason of such breach. In any action brought to enforce the covenants set forth in Section 2, 3 or 4, or to recover damages for breach thereof, the Company shall be entitled to recover reasonable attorneys' fees and other expenses of litigation, together with such other and further relief as may be proper.

5. This Agreement shall be binding upon the parties hereto and upon their respective executors, administrators, legal representatives, successors, and assigns.

6. Nothing contained in this Agreement shall be construed or confer any obligation or right to employment or to continue in the employment of the Company.

7. This Agreement shall be governed by the laws of the State of Florida, notwithstanding the fact that one or more of the parties to this Agreement is now or may become a resident or citizen of a different state. It is the intent of the parties that the Agreement be enforced to the fullest extent permissible under applicable laws and public policies. The invalidity, illegality, or unenforceability of any particular provision of this Agreement shall not affect the other provisions, and this Agreement shall be construed in all respects as if such invalid, illegal, or unenforceable provision had been omitted. If any part of this agreement is for any reason held to

be excessively broad as to time, duration, geographical scope, activity or subject, it will be construed, by limiting or reducing it, so as to be enforceable to the extent reasonably necessary for the protection of the Company.

8. Captions to and headings of the sections of this Agreement are solely for the convenience of the parties and not a part of this Agreement and shall not be used for the interpretation or determination of the validity of this Agreement or any provision hereof.

9. This Agreement shall not be amended or modified, and none of the provisions hereof shall be waived, except in a writing signed on behalf of the parties hereto or, in the case of a waiver, on behalf of the party making the waiver.

10. This Agreement may be executed in any number of copies, each of which shall be deemed an original and no other copy need be produced. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

12. This agreement shall be enforced and controlled by the laws of Florida.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date written above.

COMPANY:                                          EMPLOYEE:

By: _____                      _____
Andrew Schneider (Principal)                      Jared Toren

-4-

UNITED STATE STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____x | |
| HEDGECO, LLC *d/b/a* HEDGECO NETWORKS | ) |
| | ) |
| Plaintiff, | )    Case No. **08 CV 00494** |
| | )         (SHS) |
| | ) |
| -against- | ) |
| | ) |
| JEFFREY SCHNEIDER and | ) |
| JARED TOREN, | ) |
| Defendants. | ) |
| _____x | |

## CERTIFICATE OF SERVICE

**Please take notice** that on the 3rd day of March 2008, the undersigned attorney for the Plaintiff served a true copy of the **First Amended Complaint** upon the Attorney for the Defendants:

Eric Weinstein, Esq.
Feldman Weinstein & Smith LLP
420 Lexington Avenue
New York, New York 10170

By Federal Express overnight delivery, Tracking No. 8636 1012 2891, to the aforementioned address.

Dated: March 3, 2008
        New York, NY

 

_____
Andrew Small Esq. (AS-1294)
Law Office of Brian Reis, Esq.
**Attorney for the Plaintiff**
80 Broad Street 33rd Floor
New York, NY 10004
Direct Dial 212.983.0921
Fax 212.646.1073
E-mail: ABSLawyer@comcast.net

UNITED STATE STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x
HEDGECO, LLC *d/b/a* HEDGECO NETWORKS   )
  )
                       Plaintiff,   )    **Case No. 08 CV 00494**
  )    **(SHS)**
  )
-against-   )
  )
JEFFREY SCHNEIDER and   )
JARED TOREN,   )
                    Defendants.   )
_____x

# FIRST AMENDED COMPLAINT

Law Office of Brian Reis, P.C.
**Attorney for the Plaintiff**
80 Broad Street 33rd Floor
New York, NY 10004
Tel. 212.785.5170
Andrew Small, Esq. (AS-1294)
Direct Dial 212.983.0921
Fax 212.646.1073
E-mail: ABSLawyer@comcast.net

16

# EXHIBIT B

From: Jeff Schneider <jschneider@paradigm-ny.com>
To: Evan Rapoport <erapp@hedgeco.net>, <evan@puritansecurities.com>
Date: Sep 04 2006 - 3:37pm

Evan:

Great talking to you the other day. I want to move forward on everything we discussed but the combined ADD index is not helping the situation so I figured I would put a few ideas in writing so we can have a point of reference to get started. Do not be offended in any way if I am a little direct but I am tired of jerking each other off and getting nothing done:

As a back drop, I know one of your biggest concerns/issues is that I work at Paradigm and this has been my main focus. This will continue to be the case. However, as a result of being at Paradigm and working my ass off, in general, I have more to offer than virtually any single person you are talking to. Let me clarify.

First of all, you guys have endless investors that are not being contacted. This is an absolute and utter waste of time and resources. As I discussed with Andrew, you guys were going to hand over a bunch of investors that have not been called as soon as I signed the non compete/ non disclosure. I did this two weeks ago. What are we waiting for? You guys should just give me a bunch of names. My first goal will be to ticket them in a Paradigm fund or structured note. The notes alone pay more than any fund you are working with and I know the facts better than most so wouldn't it be logical to get started this way?

Of course many of these will not be interested in Paradigm. I think my experience gives me a leg up on everybody else in discovering what it is that they want or need. Keep in mind Paradigm has sold off capacity in SAC and done similar stuff that you guys are unaware of. I assure you if they are not interested in Paradigm, I will find out what they want and get it for them or pass it on to one of your boys.

Another point of this front is that I think you need to carefully think about who and how you give out any "untouched" investors. The initial point of contact is the most important. If, and when, you contact the sophisticated investor that we are looking for, you better be sure that the person contacting them knows their shit. The first impression is the most important with some of these guys. You will lose your chance with a lot of the right guys if they sense that HedgeCo is anything but an experienced top notch organization. You mentioned before how you want to be sure our reputation is solid. The best way to do so is to be sure that the first point of contact is with a seasoned professional. That's me, by the way.

This is our best opportunity. However, there are many others that can lead to massive revenue but, again we are doing nothing about it. Richard Anthony is one of the easiest, fastest and largest ways to start. He works with Hedge Funds and sends us a check for a piece of the revenue. My only two referrals to him resulted in $40,000 each in the first month. What are we waiting for?

Next, I have a manager that we can essentially own. Scher did the docs for onshore. He has an offshore fund but there are a couple of issues we need to review. With little time and effort, we can own 75% of both. I have done most of the work already.

Next, I constantly come across brokers, hedge fund managers etc that we can work with but because we have no formal arrangement or understanding, we miss these opportunities. Most recently, the guy I mentioned to you hung his license with Dalmore. I still think we have a shot but this guy is real and should be working with us.

I cannot be more sure that I can be instrumental in HedgeCo's growth. We just need to take the time to hammer out the details so we can get going.

Jeffry Schneider
Senior Vice President
Marketing & Structuring Team

Paradigm Global Advisors
650 Fifth Avenue, 17th Floor
New York, New York 10019
212-271-3388
212-271-3395
jschneider@paradigm-ny.com
www.paradigmhedgefunds.com

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please delete it and notify us immediately